**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 29, 2014

LETTER TO COUNSEL

> RE:  *Denise Harrison v. Commissioner, Social Security Administration*;
>       Civil No. SAG-13-3803

Dear Counsel:

On December 17, 2013, Plaintiff Denise Harrison petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 17, 21). I find that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Ms. Harrison's motion and grant the Commissioner's motion. This letter explains my rationale.

Ms. Harrison filed her claim for Supplemental Security Income ("SSI") on July 27, 2010. (Tr. 154–57). She alleged a disability onset date of January 1, 2005. (Tr. 154). Her claim was denied initially and on reconsideration. (Tr. 90–94, 100–06). A hearing was held on August 14, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 39–60). Following the hearing, the ALJ determined that Ms. Harrison was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 23–33). The Appeals Council denied Ms. Harrison's request for review, (Tr. 7–11), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Harrison suffered from the severe impairments of insulin-dependent diabetes mellitus, venous stasis, obesity, depression, and history of substance abuse in remission. (Tr. 25). Despite these impairments, the ALJ determined that Ms. Harrison retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b). The claimant has the ability to occasionally climb ramps or stairs (never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to workplace hazards. In addition, she can carry out simple tasks in 2-hour increments (which can be accommodated by regularly scheduled breaks). She can have rare (up to 5 percent of the workday) interaction (defined as having to interact in order to do the job, as opposed to being in close proximity) with

*Denise Harrison v. Commissioner, Social Security Administration*
Civil No. SAG-13-3803
October 29, 2014
Page 2

coworkers and supervisors, but only superficial, indirect interaction with the general public. She is able to adapt to simple changes in a routine work setting.

(Tr. 26). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Harrison could perform jobs existing in significant numbers in the national economy and that therefore she was not disabled. (Tr. 32–33).

Ms. Harrison raises two primary arguments on appeal. First, she takes issue with the ALJ's assessment of the medical opinion evidence on the record. Second, she claims that the ALJ's RFC assessment regarding her ability to perform light work was not supported by substantial evidence. Both arguments lack merit and are addressed below.

Ms. Harrison first contends that the ALJ erred in evaluating the medical evidence concerning her mental impairments. Specifically, Ms. Harrison argues that (1) the ALJ should have accorded greater weight to her treating mental health care providers; (2) the ALJ should not have accorded significant weight to the opinions of the state agency mental health consultants; and (3) if the ALJ found the treating providers' opinions to be inconsistent with the record, she should have ordered a psychiatric consultation.

The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. § 416.927. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. *Id.* § 416.927(c). Beginning in March 2010, Ms. Harrison sought treatment for her mental health impairments from Ms. Garcia, a licensed clinical professional counselor ("LCPC") and Dr. Olivares. (Tr. 261–270, 299–300). The ALJ assigned "little weight" to the opinions of these mental healthcare providers. Ms. Harrison contends that, because their opinions were consistent with each other, the ALJ's assignment of weight was in error.

On March 7, 2011, Dr. Olivares completed a Department of Social Services Medical Report Form, on which he opined that Ms. Harrison had (1) no restriction of activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) frequent difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. (Tr. 415). Ms. Harrison's last treatment by Dr. Olivares on the record was dated May 5, 2011. (Tr. 271). On May 2, 2012, almost a year later, Dr. Olivares completed a Mental Assessment of Ability to do Work-Related Activities. (Tr. 404–406). Dr. Olivares opined that Ms. Harrison had poor-to-no ability to make occupational adjustments in all

*Denise Harrison v. Commissioner, Social Security Administration*
Civil No. SAG-13-3803
October 29, 2014
Page 3

categories, but noted no limitations or medical/clinical findings supporting his opinion.  (Tr. 404–05).  His only note was that Ms. Harrison's last job ended seven years prior. (Tr. 404). Dr. Olivares also opined that Ms. Harrison had poor-to-no ability to make performance adjustments in all categories.  (Tr. 405).  Finally, with respect to her ability to make personal-social adjustments, Dr. Olivares opined that Ms. Harrison had fair ability to maintain her personal appearance, but poor-to-no ability in all other categories.  *Id.*  Dr. Olivares also noted no limitations or medical/clinical findings supporting his conclusions regarding Ms. Harrison's abilities to make performance or personal-social adjustments.  *Id.*

Dr. Olivares's opinions constitute "medical opinions" pursuant to social security regulations, and as such, may be assigned controlling weight if the ALJ determines they are well supported by objective medical evidence and not contradicted by the record.  See 20 C.F.R. 416.927(a).  However, the ALJ found that both opinions were inconsistent with the medical and other evidence of record.  (Tr. 30).  Specifically, she found both opinions inconsistent with Dr. Olivares's own treatment notes, which regularly indicated that Ms. Harrison's mood improved and was stable following treatment.  *Id.*  Accordingly, the ALJ assigned both Dr. Olivares's 2011 opinion and his 2012 opinion "little weight."  *Id.*  The treatment notes from Dr. Olivares include a single Outpatient Psychiatry Assessment, dated March 25, 2010, and twelve subsequent Outpatient Psychiatry Medication Follow-Ups, dated April 2010 to May 2011.  (Tr. 299–300; 271–298, respectively).  Although the notes from Dr. Olivares's medication follow-ups are sparse, they indicate that Ms. Harrison was almost always compliant with her medication, and that when she was, her mood was consistently "stable."  (Tr. 297 (compliance fair, mood improving), 295 (compliance good, mood improved), 292 (compliance good, mood stable), 289 (same), 287 (same), 285 (compliance fair, mood [illegible]), 283 (compliance good, mood stable, bright, pleasant), 281 (compliance good, overall doing well), 280 (compliance good, feeling more animated and energetic around the house), 274 (compliance good, mood stable), 272 (same)).  Dr. Olivares described Ms. Harrison's mood as "depressed" on only one occasion, and on that occasion, she had not been compliant with her medication.  (Tr. 276).  Accordingly, I find that, although Dr. Olivares's medication follow-up notes were not particularly detailed, the record supports the inconsistencies to which the ALJ referred as well as her conclusion that Ms. Harrison's depression was stable following treatment.  Notably, Ms. Harrison cites to no specific evidence on the record supporting Dr. Olivares's opinions.  The ALJ's assignment of little weight to Dr. Olivares's opinion was thus supported by substantial evidence.

On August 13, 2012, more than 16 months after the last time she treated Mrs. Harrison, Ms. Garcia also completed a Mental Assessment of Ability to do Work-Related Activities.  (Tr. 410–12).  With regard to her ability to make occupational adjustments, Ms. Garcia opined that Ms. Harrison had fair ability to follow work rules, relate to co-workers, and deal with the public. However, she opined that Ms. Harrison had poor-to-no ability to interact with supervisors, deal with stressors, function independently, maintain attention/concentration, or use judgment.  Ms. Garcia opined that Ms. Harrison had poor-to-no ability to make performance adjustments in all categories. Finally, with regard to her ability to make personal-social adjustments, Ms. Garcia opined that Ms. Harrison had good ability to maintain her personal appearance, poor-to-no ability to behave in an emotionally stable manner, and fair ability to relate predictably in social

*Denise Harrison v. Commissioner, Social Security Administration*
Civil No. SAG-13-3803
October 29, 2014
Page 4

situations and demonstrate reliability.   Ms. Garcia noted no limitations or medical/clinical findings supporting her conclusions regarding Ms. Harrison's abilities in these areas.   Her only note on the assessment form explained that "Ms. Harrison has extreme difficulty coping with anxiety, staying focused, and managing her mood."   The ALJ also assigned Ms. Garcia's opinion "little weight" because it was inconsistent with the medical and other evidence of record, and because Ms. Garcia is not an "acceptable medical source."

Notably, as a LCPC, Ms. Garcia is not an "acceptable medical source" whose opinion can be assigned controlling weight.   *See* 20 C.F.R. §§ 416.913, 416.927(c).   Ms. Harrison contends that the ALJ "disparaged" Ms. Garcia's opinion by characterizing it as a non-acceptable medical source.   Pl.'s Mem. 7.   However, Ms. Harrison's argument ignores the fact that "acceptable medical source" is simply a term of art under the regulations.   A person who is not an "acceptable medical source," cannot give a "medical opinion" or be considered a treating source under Social Security regulations.   SSR 06–3P.   Whether a source is an "acceptable medical source" is a factor that may be considered in assigning weight to that source's opinion.   *Id.*   The opinion of a non-acceptable medical source, however, remains relevant in determining the severity of an impairment and its impact on an individual's ability to function.   *Id.*   Social Security Ruling 06–3P explains that the same factors that apply to evaluating the opinions of medical sources apply to evaluating the opinions of other sources.   *Id.*   In this case, the ALJ properly noted that Ms. Garcia was not an acceptable medical source, and then evaluated her opinion in light of those factors.   Specifically, the ALJ found that Ms. Garcia's opinion was inconsistent with the medical and other evidence of record she had discussed, which included Ms. Harrison's own testimony and treatment notes from both Ms. Garcia and Dr. Olivares.   (Tr. 28–30).   Accordingly, the ALJ's assignment of "little weight" to Ms. Garcia's opinion was supported by substantial evidence and in accordance with proper legal standards.

Ms. Harrison also contends that the ALJ erred in assigning "significant weight" to the opinions of the State agency psychologists.   Pl.'s Mem. 6.   Ms. Harrison claims the assignment of weight was in error because the State agency psychologists did not give any supporting explanations for their opinions.   *Id.*   Ms. Harrison also alleges that the second State agency psychologist "adopt[ed] wholesale" the opinion of the first State agency psychologist.   *Id.*   Contrary to Ms. Harrison's allegations, however, both State agency psychologists provided an explanation for their evaluation of Ms. Harrison's mental RFC.   *See* (Tr. 72, 87).   Moreover, the second State agency psychologist engaged in a new evaluation of the evidence of record, which included treatment notes from Ms. Garcia and Dr. Olivares dated after the first psychologist's evaluation, prior to reaching conclusions regarding Ms. Harrison's mental RFC that were consistent with those reached by the first State agency psychologist.   (Tr. 80–81, 85–87).   Thus, Ms. Harrison's claim that the second psychologist simply adopted the opinion of the first "wholesale," is without merit.   The consistency between the two mental RFC assessments, especially in light of the fact that the second psychologist considered new evidence, only supports the ALJ's assignment of significant weight to those opinions.

Ms. Harrison further contends that because her mental impairment is psychiatric rather than intellectual in nature, the ALJ erred in giving greater weight to the opinions of psychologists

*Denise Harrison v. Commissioner, Social Security Administration*
Civil No. SAG-13-3803
October 29, 2014
Page 5

with a different specialization than psychiatry.  Pl.'s Mem. 7.  Ms. Harrison offers no explanation as to why the opinion of a psychologist should be accorded less weight than that of a psychiatrist, and her argument is without merit.   Ms. Harrison also claims that the first State agency psychologist did not consider evidence of her mental health impairments dated later than August 2010.  Pl.'s Mem. 6.  However, this contention is patently false.  The initial denial of her claim indicates that the psychologist evaluated treatment notes from as late as November 30, 2010. (Tr. 65).  Moreover, because the second State agency psychologist and the ALJ both evaluated the treatment notes in their entirety before assessing Ms. Harrison's mental RFC, the fact that the first psychologist did not have the benefit of all of the treatment records had no bearing on the ALJ's RFC assessment.

Ms. Harrison also argues that the ALJ's assignment of weight to the State agency psychologists' opinions was in error because they did not examine her.  Pl.'s Mem. 6.  However, despite the fact that they have not examined a claimant, State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).   When an ALJ considers the findings of a State agency consultant, the ALJ must evaluate the findings using the same factors applicable to other medical opinion evidence, including the specialty and expertise of the consultant, the supporting evidence in the case record, supporting explanations the consultant provides, and any other relevant factors.  *Id.*  In this case, after discussing Ms. Harrison's testimony as well as the notes of her treating physician and therapist, the ALJ found that the opinions of the State agency consultants were "generally consistent with the record evidence as a whole."  (Tr. 28–31).  Accordingly, the ALJ's assignment of "significant weight" to the opinions of the State agency medical consultants was supported by substantial evidence and in accordance with proper legal standards.

Ms. Harrison's argument that the ALJ erred by not ordering a consultative psychological examination is also without merit.  Ms. Harrison correctly notes that because the ALJ found the opinions of Ms. Harrison's treating mental healthcare providers inconsistent with the record, the ALJ *could* have sought a psychiatric consultative examiner.  However, unless the evidence as a whole is insufficient to support a determination, the decision to order a consultative examination is discretionary.  *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003).  The ALJ was well within her discretion to determine that the record contained adequate evidence to evaluate Ms. Harrison's claims, despite the inconsistencies she cited.  I find that the ALJ provided substantial evidence supporting her evaluation of the opinion evidence, and that her decision not to order a psychiatric consultative evaluation was in accordance with proper legal standards.

Finally, Ms. Harrison claims that the ALJ erred in assessing her physical RFC. Specifically, she contends that there is no evidence that she can perform the walking and standing requirements of light work.  Pl.'s Mem. 8.  Ms. Harrison's argument, however, fails to consider that she bears the burden of establishing that she cannot meet those requirements.  *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)) ("The claimant has the burden of production and proof in Steps 1–4.").  The only evidence Ms. Harrison cites in support of her contention that she cannot meet those requirements

*Denise Harrison v. Commissioner, Social Security Administration*
Civil No. SAG-13-3803
October 29, 2014
Page 6

is the assessment of Dr. Bennett.  *See* (Tr. 407–08).  However, the ALJ evaluated Dr. Bennett's opinion and assigned it little weight due to the fact that it was not consistent with the record evidence.  Notably, Ms. Harrison does not contest the assignment of little weight to Dr. Bennett's opinion.  Nor does she identify any other evidence supporting her claim that she cannot perform the walking and standing requirements of light work.  Accordingly, I find that the ALJ provided substantial evidence in support of her assessment of Ms. Harrison's physical RFC, including her ability to perform the walking and standing requirements of light work.  *See, e.g.*, (Tr. 28–29) (relying on Ms. Harrison's activities of daily living, the vascular evaluation of Dr. Lilly, and the results of lower extremity venous duplex scan).

For the reasons set forth herein, Ms. Harrison's Motion for Summary Judgment (ECF No. 17) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 21) is GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge